**Jason M. JACKLER, Plaintiff,**

v.

**Police Chief Matthew T. BYRNE, Individually and in his Official Capacity, Lt. Paul Rickard, in his Individual and Official Capacity, and Lt. Patrick Freeman, in his Individual and Official Capacity, Defendants.**

No. 09–CV–0126(CS).

United States District Court, S.D. New York.

Feb. 11, 2010.

James Edward Monroe, Dupée & Monroe, P.C., Goshen, NY, for Plaintiff.

Brian S. Sokoloff, Sokoloff Stern LLP, Westbury, NY, for Defendants.

### MEMORANDUM DECISION AND ORDER

SEIBEL, District Judge.

Plaintiff Jason Jackler brings this action against Police Chief Matthew T. Byrne, Lt. Patrick Freeman, and Lt. Paul Rickard of the City of Middletown Police Department (the "Middletown PD"), alleging violations of his First, Fourth, Fifth, and Fourteenth Amendment rights [1] and of his rights under the New York State Constitution. Before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 10), filed pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, Defendants' Motion is granted.

### I. PLAINTIFF'S FACTUAL ALLEGATIONS [2]

Jackler was hired as a probationary police officer by the Middletown PD on January 31, 2005. (Compl. ¶ 13.) He received a good performance review from his training supervisor and was regarded as a good probationary police officer. (*Id.* ¶ 35.) On January 6, 2006, Jackler was directed to assist Sgt. Gregory Metakes in the arrest and transportation of Zachary T. Jones. (*Id.* ¶ 14.) Upon Jackler's arrival, Jones was in handcuffs with his arms behind his back. (*Id.* ¶ 16.) Jackler opened the rear driver-side door of his patrol unit, allowing

Sgt. Metakes to place Jones in the vehicle. (*Id.* ¶ 15.) Once in the vehicle, Jones called Sgt. Metakes a "dick" loud enough for both Sgt. Metakes and Jackler to hear. (*Id.* ¶¶ 17–18.) Sgt. Metakes then reopened the car door and struck Jones in the face. (*Id.* ¶ 18.)

Following his arrest, Jones filed a complaint with Middletown PD against Sgt. Metakes for the use of excessive and unwarranted use of force. (*Id.* ¶ 20.) At the time, two other police officers noticed and recorded the physical injuries to Jones's face. (*Id.* ¶ 21.)

On January 9, 2006, Lt. Freeman directed Jackler to file a supplemental report detailing "what transpired in the course of Sgt. Metakes' arrest of Jones." (*Id.* ¶ 26.) Two days later, Jackler filed his supplemental report, which corroborated Jones's civilian complaint alleging that Sgt. Metakes's use of force was excessive and unjustified. (*Id.* ¶¶ 28–29.) Later that day, Lts. Freeman and Rickard interrogated and threatened Plaintiff about the statements made in the supplemental report. (*Id.* ¶ 30.) At this and several subsequent meetings, both Lt. Freeman and Lt. Rickard, at the "insistence and direction of Police Chief Byrne," attempted to coerce Jackler into withdrawing his supplemental report and filing a new report containing "false, incomplete, and misleading information" that would conceal Metakes's misconduct. (*Id.* ¶ 31.) Plaintiff refused on both

---

**1.** Plaintiff has not made arguments in support of his claims under the Fourth and Fifth Amendments of the U.S. Constitution. As such, the Court considers these claims abandoned. *See, e.g., Ortho Pharm. Corp. v. Cosprophar, Inc.,* 828 F.Supp. 1114, 1129 (S.D.N.Y.1993) (dismissing claim where plaintiff "appear[ed] to have abandoned this claim, having failed to argue the claim in its post-trial memo or in its response papers"); *Anti–Monopoly, Inc. v. Hasbro, Inc.,* 958 F.Supp. 895, 907 n. 11 (S.D.N.Y.1997) ("[T]he

failure to provide argument on a point at issue constitutes abandonment of the issue.").

**2.** For purposes of deciding Defendants' Motion, I assume the facts as alleged in the Complaint to be true. While I will only briefly summarize the facts as alleged, I have read and considered all of the allegations in the Complaint and the exhibits attached thereto, and I assume the Parties' familiarity with them.

counts. (*Id.* ¶¶ 31, 44.) Over the course of these meetings, both Jackler and Defendants "recover[ed] and review[ed] video footage" confirming Jones's and Plaintiff's accounts regarding the events of Jones's arrest. (*Id.* ¶ 32.) Freeman ultimately filed a report concluding that Jones's claims were "unfounded." (*Id.* ¶ 42.)

On January 19, 2006, Defendants appeared before the monthly meeting of the City of Middletown Board of Police Commissioners (the "Police Board") in order to determine whether or not to retain Plaintiff and another probationary officer as permanent police officers. (*Id.* ¶ 36.) Jackler was subsequently dismissed by the Police Board. He alleges that the Defendants gave the Police Board "false, incomplete and misleading information" about him in retaliation for his refusal to "change, alter or falsify his supplemental report." (*Id.* ¶ 37.) The Police Board had never before dismissed a probationary police officer. (*Id.* ¶ 40.)

## II. DISCUSSION

Plaintiff's Complaint, filed on January 8, 2009, raises three causes of action: (1) a First Amendment retaliation claim under 42 U.S.C. § 1983; (2) a conspiracy claim under 42 U.S.C. § 1983; and (3) a substantive due process claim.[3] On July 22, 2009, Defendants filed a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), seeking dismissal on the ground that Plaintiff failed to state claims upon which relief can be granted. Alternatively, they argue that they are entitled to qualified immunity. (Defs.' Reply Br. 9.)

### A. Standard of Review

The Court evaluates a motion under Rule 12(c) under the same standard as a motion under Rule 12(b)(6). *United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.,* 584 F.Supp.2d 645, 651 (S.D.N.Y. 2008) (citing *Patel v. Contemp. Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001)). All factual allegations are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 129 S.Ct. at 1950.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the

---

3. Plaintiff originally stated an additional claim under 18 U.S.C. § 1962, but has since "voluntarily agreed" to withdraw it. (Pl's. Opp'n 8.)

assumption of truth," and then determines whether the remaining well-pleaded factual allegations, if accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 1950. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed.R.Civ.P. 8(a)(2)).

## B. First Amendment Retaliation Claim

■ To state a prima facie claim of First Amendment retaliation under Section 1983, a plaintiff must demonstrate that: (1) the speech was constitutionally protected; (2) plaintiff suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination. *Washington v. County of Rockland,* 373 F.3d 310, 320 (2d Cir.2004). The parties' briefing focuses almost exclusively on the first element of this test: whether Plaintiff's speech was constitutionally protected.

■ There are two instances of speech on Jackler's part: (1) his supplemental report and (2) his refusal to "change, alter, or falsify" his supplemental report. It is the latter that, according to Plaintiff, forms the basis of his First Amendment retaliation claim.[4]

■ Where a public employee is the plaintiff in a Section 1983 retaliation claim, he must, in order to establish that his speech was constitutionally protected, show that: (1) he spoke not as an employee in the course of his duties but rather as a citizen; and (2) the topic of the speech was a matter of public concern. *See Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

In *Garcetti,* Deputy District Attorney Richard Ceballos alleged retaliation based on his memorandum recommending dismissal of a criminal case due to misrepresentations made in an affidavit used to obtain a search warrant. Ceballos's official duties included supervising attorneys, investigating charges, and preparing filings. The Supreme Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421, 126 S.Ct. 1951. It concluded that Ceballos did not speak as a citizen because his speech was made as a "prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case." *Id.* The parties in *Garcetti* agreed that Ceballos had written the disposition memorandum pursuant to his official job duties, thereby relieving the Court from "articulat[ing] a comprehensive framework" detailing when an individual speaks as an employee as opposed to as a citizen. *Id.* at 424, 126 S.Ct. 1951.

Despite the lack of such a framework delineating the differences between citizen and employee speech, *Garcetti* does offer some guidance for determining when an individual speaks as an employee pursuant to official job duties. The Court described the inquiry as "a practical one," because "formal job descriptions often bear little

---

4. The First Amendment "protects the right to refrain from speaking just as surely as it pro-

tects the right to speak." *Lewis v. Cowen,* 165 F.3d 154, 161 (2d Cir.1999).

resemblance to the duties an employee actually is expected to perform," and because the "listing of a specific task" does not conclusively demonstrate that the task is "within the scope of the employee's professional duties for First Amendment purposes." *Id.* at 424–25, 126 S.Ct. 1951. Notably, the *Garcetti* Court eschewed a focus on the location and topic of the speech at issue. The Supreme Court did not consider dispositive either the fact that Ceballos expressed his views within his office (as opposed to publicly) or that Ceballos's speech related to his job. *See id.* at 420–21, 126 S.Ct. 1951.

Instead, the Court focused on whether the speech was made pursuant to the employee's "official job duties." It analyzed whether the employer was exercising control over employee speech that the employer had "commissioned or created," *id.* at 422, 126 S.Ct. 1951, and observed that "when a public employee speaks pursuant to employment responsibilities ... there is no relevant analogue to speech by citizens who are not government employees." *Id.* at 423–24, 126 S.Ct. 1951. Ultimately, the Court reasoned that "refusing to recognize First Amendment claims based on government employees' work product" did not "prevent them from participating in public debate." *Id.* at 422, 126 S.Ct. 1951. For example, writing a letter to a local newspaper or discussing politics with a co-worker were activities that retained the possibility of First Amendment protection. *See id.* at 423–24, 126 S.Ct. 1951.

The Second Circuit in *Weintraub v. Bd. of Educ.*, 593 F.3d 196 (2d Cir.2010), recently further analyzed *Garcetti's* requirement that the speech be in the employee's capacity as citizen, not employee, to be protected. In that case the plaintiff, a schoolteacher, had filed a union grievance over what he regarded as the school administration's insufficient discipline of a student who had acted violently in class. The Court held that the grievance was not protected speech, because it was made in furtherance of the plaintiff's job duties, even though it was not a specific requirement of his job. *See id.* at 201–02.

▮ I am constrained by *Garcetti* and *Weintraub* to conclude that Plaintiff's speech here was in his capacity as a police officer, not a citizen. *Garcetti* held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." 547 U.S. at 421, 126 S.Ct. 1951. Speech is "pursuant to" official duties if it "owes its existence to a public employee's professional responsibilities." *Id.* The speech need not be required by the employer; it is "'pursuant to official duties' so long as the speech is in furtherance of such duties." *Weintraub*, 593 F.3d at 202. Jackler's refusal to alter his report was done in his capacity as a police officer, and that refusal only occurred because he was an officer. Ironically, it is because he was a public employee with a duty to tell the truth that his insistence on fulfilling that duty is unprotected.[5]

But because the Second Circuit made so clear in *Weintraub* that speech is pursuant to official duties where it is "'part-and-parcel of [the employee's] concerns' about his ability to 'properly execute his duties,'" 593 F.3d at 203 (quoting *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir.2007)), and that in determining whether an employee speaks as a citizen the focus must be on the role the speaker occupied when he spoke, *see id.* (same),

---

5. Because this outcome is so troubling, I would encourage higher courts to consider whether *Garcetti* should apply at all when the employee speech concerns a matter of fact, rather than a matter of judgment, opinion, or policy, as in *Garcetti*.

and because it is so clear on the facts as alleged by Jackler that he refused to withdraw or alter his truthful report in the belief that the proper execution of his duties as a police officer required no less, I do not see how I can avoid the conclusion that he was speaking as an officer, not a citizen, when he did so.

*Buazard v. Meridith,* 172 F.3d 546 (8th Cir.1999), which involved facts remarkably similar to those here, reinforces this conclusion. An officer alleged retaliation based on his refusal to change two reports. The Eighth Circuit, writing before *Garcetti,* analyzed the issue as whether the plaintiff's speech related to a matter of public concern, but its evaluation, when viewed through the post-*Garcetti* lens, fits more comfortably under rubric of whether the plaintiff spoke as a citizen. The Court concluded that the speech was not protected, because "there [was] no indication that [the officer], in making, or refusing to change, his statements, was taking any action as a concerned citizen, rather than simply as an employee following orders or refusing to follow them." *Id.* at 548–49. The same is true in this case.

"[U]nder *Garcetti,* because [Jackler] made his statements 'pursuant to' his official duties as a [police officer], he was 'not speaking as [a] citizen[ ] for First Amendment purposes.'" *Weintraub,* 593 F.3d at 205 (quoting *Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951) (some alteration in the original). His First Amendment retaliation claim under Section 1983 must therefore be dismissed. Because the implications of this conclusion are so disturbing in the context of an employee who refuses a superior's direction to lie about facts, I would welcome appellate scrutiny of the issue.[6]

### C. Conspiracy Claim

■ Plaintiff also alleges a conspiracy claim pursuant to 42 U.S.C. § 1983. To prove a Section 1983 conspiracy claim, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999) (citations omitted). Because I have reluctantly concluded that Jackler's speech is not protected by the First Amendment, and thus his constitutional rights were not violated, he cannot show that the Defendants conspired to in-

---

6. While I have no need to consider qualified immunity in light of the disposition herein, and while I also decline to reach on the issue on the ground that Defendants raised it only in their reply papers, *see Playboy Enters. v. Dumas,* 960 F.Supp. 710, 720 n. 7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.") (citations omitted), I also note that the Second Circuit's decision in *Fierro v. City of N.Y.,* 341 Fed.Appx. 696 (2d Cir.2009), would seem to require the conclusion that the Defendants are qualifiedly immune here. There an assistant principal allegedly refused the principal's order to make false and damaging statements about teachers whose careers the principal wished to sabotage. *Id.* at 697. The Second Circuit stated that "neither the Supreme Court nor this Court has held that there is a constitutionally protected right for public employees to refuse to follow orders to engage in misconduct," and although it declined to "address[ ] the substantive question of whether a public employee's refusal to abide by an instruction to engage in misconduct is protected speech under the First Amendment," it held that "such protection was certainly not clearly established at the time the principal engaged in her allegedly retaliatory conduct." *Id.* It concluded that the fact that the principal's "alleged instructions may have been patently wrongful does not establish that the constitutional right asserted was clearly established." *Id.* I am not aware of any authority in the interim clearly establishing that right; to the contrary, the import of the Second Circuit's decision in *Weintraub,* is, as discussed above, that such refusals are unprotected if made in an employee's role as employee.

flict an unconstitutional injury. The conspiracy claim must therefore also be dismissed.

### D. Substantive Due Process Claim

■ The Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Jackler argues his unlawful termination deprived him of a property interest in his job, but this claim fails because Jackler had no protectable property right in employment with the Middletown PD.

■ The Constitution does not create property interests; rather, those interests arise from "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). New York State law establishes that "a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason." *Finley v. Giacobbe,* 79 F.3d 1285, 1297 (2d Cir.1996) (quotation omitted).

Jackler does not dispute that he was a probationary police officer. Therefore, while his claims, if true, might shock the conscience, *see Benzman v. Whitman,* 523 F.3d 119, 126 (2d Cir.2008),[7] his claim must fail. *Piccoli v. Yonkers Bd. of Educ.,* No. 08-8344, 2009 WL 4794130, at *6 (S.D.N.Y. Dec. 11, 2009) ("Plaintiff does not have a substantive due process claim based on the mere fact that she has alleged Defendants' actions to be conscience-shocking."); *see S & D Maint. Co., Inc. v. Goldin,* 844 F.2d 962, 965–66 (2d Cir.1988) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it."); *see also Castro v. N.Y. City Bd. of Educ.,* 777 F.Supp. 1113, 1117 (S.D.N.Y.1990) ("It is well settled under New York law that a probationary employee has no property rights in his employment and may be terminated for almost any reason or no reason at all.") (internal quotation marks and citation omitted). That no probationary officer had previously been dismissed does not create an entitlement in the face of such clearly contrary state law. *See Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 223–24 n. 9, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) ("A property interest ... cannot be inferred from a consistent practice without some basis in state law."); *Allen v. Cuomo,* 100 F.3d 253, 261 (2d Cir.1996) ("A constitutional entitlement cannot be created ... merely because a wholly and expressly discretionary state privilege has been granted generously in the past.") (internal quotations and citations omitted).

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to dismiss is GRANTED and the Complaint is dismissed in its entirety. The Clerk is directed to terminate the pending motion, (Doc. 10), and close the case.

**SO ORDERED.**

---

**7.** It would certainly be appalling if police officials, who are entrusted with upholding truth and justice, ordered an officer to lie to cover up another officer's misconduct. Such conduct, if it occurred, would feed the public cynicism about the police that makes law enforcement so difficult for the vast majority of officers who are honest.