# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 6, 2010       Decided August 31, 2011

No. 08-5111

DAVID M. BOWIE,
APPELLANT

v.

CHARLES C. MADDOX, INSPECTOR GENERAL, IN HIS OFFICIAL
AND INDIVIDUAL CAPACITIES, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cv-00948)

———

On Petition for Rehearing

———

Before: SENTELLE, *Chief Judge*, BROWN, *Circuit Judge*,
and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: David M. Bowie, a former official of the District of Columbia Office of the Inspector General ("OIG"), says he was fired in retaliation for exercising his First Amendment rights. Bowie refused to sign an affidavit his employer drafted for him in response to a former subordinate's employment discrimination claim; instead, Bowie re-wrote the affidavit in a manner critical of OIG's decision to terminate the subordinate. We affirmed the district court's grant of summary judgment in favor of OIG on Bowie's First Amendment retaliation claim, because Bowie's speech was "pursuant to his official duties." *Bowie v. Maddox*, 642 F.3d 1122, 1134 (D.C. Cir. 2011) (alteration omitted) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Bowie petitioned for rehearing.

In *Garcetti*, the Supreme Court affirmed that "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." 547 U.S. at 419. But the Court also held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Applying that holding to the facts, the Court concluded that Ceballos, a deputy district attorney "did not speak as a citizen by writing a memo [to his supervisors] that addressed the proper disposition of a pending criminal case." *Id.* at 422. Instead, "[w]hen he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee." *Id.* Therefore, his First Amendment retaliation claim failed.

In Bowie's petition for rehearing, he denies that *Garcetti* bars his claim. He argues that even if the relevant speech was

ordered by his government employer,[1] it is protected by the First Amendment because it is analogous to the speech of

---

[1] Bowie argues in the alternative that his speech was not pursuant to official duties. This argument fails for reasons we have already explained:

> Bowie's efforts to produce an affidavit were undertaken at the direction of his employer and in his capacity as Assistant Inspector General for Investigations and Johnson's superior. The first version of the affidavit was drafted for OIG's convenience by a Deputy Attorney General as counsel for OIG, and it was given to Bowie for his signature by . . . OIG's general counsel. Bowie revised the affidavit on a timetable approved by the general counsel, and then submitted it to her for submission with . . . OIG's position statement in the EEOC. Bowie does not allege Defendants stymied any personal effort to submit his affidavit to the EEOC or to Johnson directly. Indeed, Bowie made no such effort. His affidavit, like the draft he refused to sign, identified him in the first paragraph and signature block as 'Assistant Inspector General for Investigations.' All the speech underlying Bowie's First Amendment claim occurred in his official capacity.

*Bowie*, 642 F.3d at 1134.

In his petition, Bowie points out that the EEOC has administrative subpoena power. Petition at 7; *see* 42 U.S.C. § 2000e-9; 29 U.S.C. § 161. But Bowie has never alleged that the EEOC subpoenaed his testimony individually or that he tried to submit his affidavit to the EEOC as a private citizen. *See* Petition at 14 ("Neither Johnson nor the EEOC ever asked Bowie directly for the affidavit."). Instead, Bowie acknowledges it was OIG that, in response to an EEOC request addressed to OIG's personnel director, "sought . . . to have Bowie sign [OIG's] version" of the affidavit. Petition at 13. Because the EEOC never subpoenaed

private citizens who submit testimony to the EEOC. Petition at 8–9. The *Garcetti* Court did observe that "[w]hen a public employee speaks pursuant to employment responsibilities . . . there is no *relevant* analogue to speech by citizens who are not government employees." 547 U.S. at 424 (emphasis added). But this statement does not mean that whenever speech has a civilian analogue it is protected by the First Amendment. The Court made clear that only when public employees "make public statements outside the course of performing their official duties" do they "retain some possibility of First Amendment protection." *Id.* at 423. Only then is the analogy to private speech "relevant." *Id.* at 424.

Bowie's argument to the contrary finds support in a Second Circuit opinion that issued the day after he filed his petition for rehearing. *Jackler v. Byrne*, No. 10-0859, 2011 U.S. App. LEXIS 15265 (2d Cir. Jul. 22, 2011). The plaintiff in *Jackler* was a probationary police officer who, pursuant to instructions from a superior, filed a report documenting a fellow officer's use of excessive physical force. *Id.* at *7. The chief of police and two administrative officers pressured Jackler to withdraw his report and file a false one. *Id.* at *8–9. When Jackler refused, he was fired. *Id.* at *9–10. The court

---

Bowie's individual testimony, and Bowie never composed or submitted any such testimony except as instructed by his employer, the only speech at issue was pursuant to his official duties. "[T]he government as employer is free to control the content of 'speech that owes its existence to a public employee's professional responsibilities.'" *Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009) (quoting *Garcetti*, 547 U.S. at 421). *Contra Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) ("Even if offering (adverse) testimony is a job duty, courts rather than employers are entitled to supervise the process. A government cannot tell its employees what to say in court, nor can it prevent them from testifying against it." (citation omitted)).

concluded Jackler's refusal to "obey [his employer's] instructions . . . is not beyond the scope of the First Amendment." *Id.* at \*17.

The Second Circuit reasoned that Jackler's disobedience was analogous to a private citizen's lawful refusal to rescind a true accusation, to make a false one, and to file a false police report, and that Jackler's conduct was therefore protected by the First Amendment. *Id.* at \*36, 38–39. Thus, the court elided the question whether Jackler spoke as a citizen into its identification of a civilian analogue for the relevant speech. Because Jackler's speech was analogous to that of a private citizen, the court deduced that he "was not *simply* doing his job in refusing to obey those orders." *Id.* at \*39 (emphasis added). The Second Circuit did not dispute the district court's observation that Jackler "refused to withdraw or alter his truthful report in the belief that the proper execution of his duties as a police officer required no less." *Id.* at \*14 (quoting *Jackler v. Byrne*, 708 F. Supp. 2d 319, 325 (S.D.N.Y. 2010)). Indeed, the Second Circuit agreed that "a police officer has a duty not to substitute a falsehood for the truth.'" *Id.* at \*37. Even so, the court held Jackler's attempt to fulfill that professional responsibility by disobeying an order to the contrary was protected speech, because private citizens also have a duty not to file false statements. *Id.* at \*37–38.

The Second Circuit gets *Garcetti* backwards. The critical question under *Garcetti* is not whether the speech at issue has a civilian analogue, but whether it was performed "pursuant to . . . official duties." 547 U.S. at 421; *cf. Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009) ("[A]lthough testimony before a city council might otherwise be just the sort of citizen speech protected by the First Amendment, the uncommonly close relationship between [the plaintiff's] duties and his advocacy before the council precludes

protection."). A test that allows a First Amendment retaliation claim to proceed whenever the government employee can identify a civilian analogue for his speech is about as useful as a mosquito net made of chicken wire: All official speech, viewed at a sufficient level of abstraction, has a civilian analogue. Certainly the district attorney's memo in *Garcetti* was analogous in some sense to private speech—for example, testimony or argumentation on the same subject by the criminal defendant it concerned. Critically, though, Ceballos's memo was composed as part of his government job, and the Supreme Court unambiguously "reject[ed] . . . the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties." *Garcetti*, 547 U.S. at 426.

The Second Circuit concluded that, because the police department "could not, consistent with the First Amendment, have forced [a civilian] to withdraw his complaint," Jackler "was entitled to the same constitutional protection" in disobeying the orders of his government employer. *Jackler*, 2011 U.S. App. LEXIS 15265 at *37. This begs the question. Under *Garcetti*, the rules are different for government employees speaking in their official capacities. An utterance made "pursuant to employment responsibilities" is unprotected even if the same utterance would be protected were the employee to communicate it "as a citizen." *Garcetti*, 547 U.S. at 423, 424. As all of the dissenting justices recognized, *Garcetti* "categorically" denies recovery under the First Amendment to plaintiffs who spoke "pursuant to . . . official duties." *Id.* at 430 (Souter, J., dissenting); *see also id.* at 446 (Breyer, J., dissenting) ("In a word, the majority says, 'never.'"); *id.* at 426 (Stevens, J., dissenting) ("The proper answer to the question . . . is 'Sometimes,' not 'Never.'").

Under the circumstances, it is not difficult to sympathize with the Second Circuit's dubious interpretation of *Garcetti*. The police chief's instruction to Jackler and the actions he ordered Jackler to take were clearly illegal. *See Jackler*, 2011 U.S. App. LEXIS 15265 at *30–34. But the illegality of a government employer's order does not necessarily mean the employee has a cause of action *under the First Amendment* when he contravenes that order. *See Winder*, 566 F.3d at 216 ("Some remedy, such as a properly preserved claim under the whistleblower protection laws, may have been available to [the plaintiff]. But . . . the First Amendment does not provide that remedy.").

Because Bowie spoke as a government employee, the district court rightly granted summary judgment in favor of Bowie's employer on his First Amendment retaliation claim. Therefore, the petition for rehearing is

*Denied.*