In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1430

LORENZO DAVIS,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CV 7771 — **Charles P. Kocoras**, *Judge.*

ARGUED JANUARY 5, 2018 — DECIDED MAY 8, 2018

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Lorenzo Davis worked for Chicago's
Independent Police Review Authority. He alleges that his su-
pervisor fired him because he refused to change his findings
in a number of investigations into police misconduct. Davis
sued the City of Chicago, arguing that his firing violated his
First Amendment rights. The district court dismissed Davis's
claim. We affirm because Davis's refusal to change his reports
is not protected speech.

## I. BACKGROUND

Chicago's Independent Police Review Authority ("IPRA") investigated[1] certain types of complaints against Chicago police, including domestic violence, excessive force, and death in police custody. Chi., Ill., Municipal Code §§ 2-57-020, -040(a)–(f). After investigating such allegations, IPRA made a disciplinary recommendation to the Chicago Police in the form of a report. The reports summarized the investigation and included findings on the alleged misconduct: namely, whether the allegations were "sustained," "not sustained," "exonerated," or "unfounded."

IPRA investigators played a key role in creating these reports. They interviewed police and civilian witnesses and procured and preserved other evidence. They also drafted the report. Nevertheless, IPRA's Chief Administrator retained final responsibility for making recommendations to the Chicago Police. *Id*. § 2-57-040(h). The Administrator could also create "rules, regulations and procedures for the conduct of [IPRA's] investigations." *Id.* § 2-57-040(m).

Lorenzo Davis began working for IPRA in 2008 as an investigator. In 2010, he was promoted to supervisor. In both positions, Davis collected and reviewed evidence on complaints of police misconduct, then submitted draft reports. In 2014, Scott Ando became IPRA's Chief Administrator. Ando hired Steven Mitchell as his First Deputy Chief Administrator.

---

[1] In 2017, the Civilian Office of Police Accountability replaced IPRA as Chicago's police-oversight agency.

Davis alleges that between 2014 and 2015, Ando and Mitchell ordered Davis to change "sustained" findings of police misconduct and to change his reports to reflect more favorably on the accused officers. Davis refused to change his findings. Ando allegedly threatened to fire Davis if he did not change his disciplinary recommendations, but Davis still refused. Davis also alleges that Ando and Mitchell requested Microsoft Word versions of Davis's reports to alter them in a way that would look like Davis had made the changes.

In March 2015, Ando implemented a policy requiring his approval for all "sustained" findings. Under the new policy, if an investigator refused to make a change recommended by Ando, he would be disciplined for insubordination. After the policy was implemented, Davis again refused to change "sustained" findings. Ando fired him in July 2015.

In the district court, Davis claimed that Ando fired him because he refused to change his "sustained" findings. He insisted that this violated his First and Fourteenth Amendment rights. He also alleged violations of the Illinois Whistleblower Act and common law retaliatory discharge.

The district court dismissed his constitutional claims with prejudice and declined to exercise supplemental jurisdiction over his state law claims. Davis appeals only his First Amendment claim, which we review *de novo*. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## II. ANALYSIS

"There is considerable value … in encouraging, rather than inhibiting, speech by public employees." *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014). But "government offices could not

function if every employment decision became a constitu-
tional matter." *Connick v. Myers*, 461 U.S. 138, 143 (1983). Thus,
"[w]hen a citizen enters government service, the citizen by ne-
cessity must accept certain limitations on his or her freedom."
*Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

To show that his speech is protected under the First
Amendment, Davis—a public employee—must demonstrate
that "(1) he made the speech as a private citizen, (2) the speech
addressed a matter of public concern, and (3) his interest in
expressing that speech was not outweighed by the state's in-
terests as an employer in 'promoting effective and efficient
public service.'" *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir.
2013) (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir.
2008)). Because Davis did not speak as a private citizen, we
reach only the first step of this analysis.

Whether an employee speaks as an employee or a citizen
depends on whether the speech was made "pursuant to [his]
official duties." *Garcetti*, 547 U.S. at 421. The "inquiry is a prac-
tical one" that goes beyond a written job description. *Id*. at
424. The employee's official duties include both formal job re-
quirements and "the employer's real rules and expectations."
*Fairley v. Andrews*, 578 F.3d 518, 523 (7th Cir. 2009).

Our conclusion that Davis spoke pursuant to his job duties
is straightforward. Given his position in IPRA's hierarchy, Da-
vis was responsible for revising his reports at the direction of
his superiors. Indeed, Chicago's Municipal Code assigned the
power to make disciplinary recommendations to IPRA's Chief
Administrator, not a mid-level supervisor. Chi., Ill., Municipal
Code § 2-57-040(h). The revision policy Ando implemented in
2015 further cements the conclusion that Davis's duties in-

cluded revising his reports. Because Davis's refusal was pursuant to his job duties, he spoke as a public employee rather than a private citizen. His speech, therefore, falls outside of the First Amendment's scope.

Davis offers two main reasons for why we should find that his speech is protected. Neither is persuasive. First, he argues that he did not act under his duties because his duties could not have included drafting inaccurate and misleading reports to absolve officers of misconduct. But the fact that an employee may have good reasons to refuse an order, does "not necessarily mean the employee has a cause of action *under the First Amendment* when he contravenes that order." *Bowie v. Maddox*, 653 F.3d 45, 48 (D.C. Cir. 2011).[2]

Second, Davis attempts to create a distinction between a dismissal following an affirmative disclosure and one following a refusal to make a statement. In this context, however, the distinction is meaningless. Concerns about regular intervention by courts in the management of public employees motivated *Garcetti*. 547 U.S. at 423. Those concerns exist regardless of whether the government fires a public employee for making a statement or refusing to make one.

Because IPRA required Davis to draft and revise his reports, his refusal to revise those reports was speech made "pursuant to [his] official duties." *Garcetti*, 547 U.S. at 421. He therefore spoke as a public employee rather than a private citizen. The First Amendment does not protect this speech.

---

[2] Davis may still have other avenues for relief—the district court dismissed his Illinois Whistleblower Act and common law retaliation claims without prejudice.

### III. CONCLUSION

Davis may have had good reasons to refuse to revise his reports. But good intentions alone do not grant First Amendment protection to speech by public employees. We therefore AFFIRM the district court's dismissal of Davis's First Amendment retaliation claim.

HAMILTON, *Circuit Judge*, concurring. I join the court's opinion because plaintiff Davis is challenging the way he was supervised in carrying out his official duties. He was not speaking (or refusing to speak) as a private citizen. I offer two additional points on issues that are raised here and that are likely to recur in cases involving, among other topics, investigations into police actions.

First, the speech in question, about the results of official police investigations into fatal police-action shootings and allegations of police misconduct, qualifies as speech about a matter of public concern. See, e.g., *Kristofek v. Village of Orland Hills*, 832 F.3d 785, 794–95 (7th Cir. 2016); see also, e.g., *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006) ("Exposing governmental inefficiency and misconduct is a matter of considerable significance."); *Jackler v. Byrne*, 658 F.3d 225, 236–37, 241–42 (2d Cir. 2011) (reversing dismissal of First Amendment claim by police officer allegedly fired for refusing to falsify reports for internal investigations of excessive-force complaints). In finding otherwise, the district court mixed two distinct elements of the proper analysis. On this element, the court focused mistakenly on Davis's role as an employee. That role meant he was not speaking as a private citizen, but it did not affect the separate question of whether he was addressing matters of public concern.

Second, Davis does not contend he was fired for refusing to lie about matters of fact. He was fired for refusing to accept his boss's different *evaluations* of facts. The difference is important to distinguish this case from *Jackler v. Byrne*, where the Second Circuit reversed dismissal of a First Amendment claim by a police officer. Officer Jackler alleged he was fired

for having refused to make false statements of fact in an investigation of a civilian's complaint that another officer had used excessive force. 658 F.3d at 230–31. The Second Circuit explained that the police department's discretion as an employer "does not include authority to coerce or intimidate its employees to engage in criminal conduct by filing reports that are false in order to conceal wrongdoing by another employee or to conceal eyewitness corroboration of civilian complaints of such wrongdoing." *Id*. at 242; see also *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014) (holding that "the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities"); *Gonzalez v. City of Chicago*, 239 F.3d 939, 941 (7th Cir. 2001) (pre-*Garcetti*, if police investigator were ordered to rewrite reports so as not to disclose police corruption, he would have First Amendment right to expose police cover-up to the public).