In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1463

KELVIN LETT,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-4993 — **John Robert Blakey**, *Judge.*

ARGUED DECEMBER 4, 2019 — DECIDED JANUARY 6, 2020

Before MANION, KANNE, and BARRETT, *Circuit Judges.*

BARRETT, *Circuit Judge.* Kelvin Lett was an investigator in
the Chicago municipal office that reviews allegations of police
misconduct. In that role, Lett helped prepare an investigative
report about a police shooting. Lett's supervisor directed him
to write in the report that police officers had planted a gun on
the victim of the shooting, but Lett did not believe that the
evidence supported that finding and refused. After he faced
disciplinary consequences as a result, Lett sued his

supervisors and the City of Chicago for retaliating against him in violation of the First Amendment. The district court dismissed all of Lett's claims, and Lett now appeals, insisting that his refusal to alter the report constitutes protected citizen speech. But as the district court recognized, *Davis v. City of Chicago*, 889 F.3d 842 (7th Cir. 2018), squarely forecloses this argument. Because Lett spoke pursuant to his official duties and not as a private citizen when he refused to alter the report, the First Amendment does not apply.

## I.

This case comes to us on a motion to dismiss, so we take the allegations in Lett's complaint as true. *Kubiak v. City of Chicago*, 810 F.3d 476, 479 (7th Cir. 2016).

Lett worked as an investigator for Chicago's Civilian Office of Police Accountability (formerly known as the Independent Police Review Authority), a municipal office tasked with reviewing allegations of police misconduct. In 2016, Lett was working on an investigation into police involvement in a particular civilian shooting. The office's Chief Administrator, Sharon Fairley, directed Lett to include in the report a finding that police officers had planted a gun on the victim of the shooting. Lett refused because he did not believe that the evidence supported that finding.

Lett raised his concerns with Fairley's deputy, who in turn shared them with Fairley. Not long after that, Lett was removed from his investigative team, then removed from investigative work altogether, and ultimately assigned to janitorial duties. Fairley then opened an internal investigation into Lett for disclosing confidential information. The internal investigation concluded that Lett had violated the office's

confidentiality policy, and Fairley ordered that Lett be fired. Convinced that the internal investigation was a hit job, Lett initiated a grievance through his union. The grievance arbitrator, siding with Lett, ordered the office both to reinstate him with backpay and to expunge his record. But when Lett returned to his office, Fairley immediately placed him on administrative leave with pay. Lett was assigned on paper to the Chicago Police Department's FOIA office, but in reality he was not allowed to return to work.

Lett sued his supervisors, as well as the City of Chicago. Count 1, brought against all individual defendants under 42 U.S.C. § 1983, alleged that the supervisors had retaliated against Lett for his refusal to write false information in his report, in violation of his First Amendment rights. Count 2 asserted *Monell* liability under § 1983 for the City and for Fairley in her official capacity based on the supervisors' actions.[1] Because it concluded that Lett had acted as a public employee rather than as a private citizen when he refused to alter the investigative report, the district court dismissed these claims with prejudice under FED. R. CIV. P. 12(b)(6).

## II.

For a public employee to prove retaliation in violation of the First Amendment, he must first establish that his speech was constitutionally protected. *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013). Although the First Amendment offers public employees some protection, "it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti*

---

[1] Lett asserted two additional federal claims that he has abandoned on appeal, as well as supplemental state-law claims that the district court dismissed without prejudice.

*v. Ceballos*, 547 U.S. 410, 420 (2006) (citation omitted). A public employee's speech is therefore only protected if (1) he spoke as a private citizen rather than in his capacity as a public employee; (2) he spoke on a matter of public concern; and (3) his interest in expressing the speech is "not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.'" *Swetlik*, 738 F.3d at 825 (citation omitted). This appeal concerns the first element: whether Lett spoke as a private citizen when he refused to amend the investigative report.

*Garcetti v. Ceballos* supplies the test for distinguishing employee and citizen speech. Under *Garcetti*, the key question is whether the employee makes the relevant speech "pursuant to [his] official duties." 547 U.S. at 421. In other words, we ask whether the speech "owes its existence to a public employee's professional responsibilities." *Id.* If it does, then the employee speaks in his capacity as an employee rather than a private citizen and his speech is not protected.

We applied *Garcetti*'s test to similar facts in *Davis v. City of Chicago*, 889 F.3d 842 (7th Cir. 2018). Lorenzo Davis was also an investigator in the Civilian Office of Police Accountability, and, like Lett, he alleged retaliation for his refusal to amend investigative reports. Each report contained a summary of the allegations of police misconduct and a finding on whether each allegation of misconduct was "sustained," "not sustained," "exonerated," or "unfounded." According to Davis, the Chief Administrator at the time directed him to change "sustained" findings and to alter his reports to reflect more favorably on police officers. *Id.* at 844. Because it was part of Davis's professional responsibilities to revise his reports at the direction of his supervisors, we concluded that he made

his refusal "pursuant to his official duties." *Id.* at 845 (alteration and citation omitted). In making that determination, we rejected Davis's argument that drafting inaccurate or misleading reports could not have been part of his job duties. *Id.* We explained that "the fact that an employee may have good reasons to refuse an order, does 'not necessarily mean the employee has a cause of action *under the First Amendment* when he contravenes that order.'" *Id.* at 845–46 (citation omitted). The First Amendment therefore did not protect Davis's speech.

Lett's case bears more than a passing resemblance to the facts in *Davis*. Lett held the same job as Davis and alleges retaliation for the same activity: refusing to alter an investigative report that he was assigned to prepare. Just as in *Davis*, Lett would have had neither occasion nor reason to refuse the request if not for his job. In the language of *Garcetti*, Lett's refusal to amend the report was "speech that owe[d] its existence" to his professional responsibilities. 547 U.S. at 421. And while Lett contends that altering a report to include unsupported findings was necessarily outside his official job duties, *Davis* squarely forecloses that argument. As in *Davis*, the fact that Lett may have had a good reason to refuse to amend the report does not grant him a First Amendment cause of action. *See Davis*, 889 F.3d at 845–46.

Lett nevertheless argues that *Davis* is distinguishable. He asserts that Davis was asked to alter his conclusions, whereas Lett was asked to lie about matters of fact—a distinction not mentioned by the majority opinion in *Davis* but emphasized in a concurrence. *Id.* at 846 (Hamilton, J., concurring). Try as he might, however, Lett cannot characterize his speech as relaying facts rather than conclusions. Fairley told Lett to add

the finding that a gun was planted on the shooting victim. It is true that someone who personally observed the police handle the victim's gun could know as a matter of fact whether the gun was planted or whether the victim carried it. But Lett never alleged that he or any of his superiors personally observed the events in the report. Instead, Lett was tasked with analyzing the evidence before him. Without the benefit of personal observation, a finding that the gun was or was not planted was necessarily a conclusion drawn based on inferences. Lett's case is thus on all fours with *Davis*.

Lett's concern about his First Amendment right not to lie in sworn testimony is similarly misplaced. A public employee's truthful sworn testimony made outside the scope of his official duties is citizen speech. *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014). Lett argues that we should expand *Lane* beyond sworn trial testimony to include his investigative report because it is likely that the report will be used in litigation. We need not address this argument, though, because Fairley did not ask Lett to add lies to the report—only conclusions with which Lett disagreed. And as we have already explained, the First Amendment does not protect Lett's refusal to amend the investigative report.

\* \* \*

The district court properly dismissed Lett's claims against his supervisors and the City of Chicago, and we AFFIRM its judgment.